TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective, and
potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ X
JIN ZHONG XIN and RUIXUAN CUI,
*on behalf of themselves and others similarly situated,*

Plaintiff,

v.

1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC.
    d/b/a Anago Sushi Japanese Thai Cuisine;
ROYAL SIAM RESTAURANT INC.
    d/b/a Royal Siam Thai Cuisine;
SUSHI SUKI YORKER, INC.
    d/b/a Sushi Suki;
SUSHI SUKI, NEW YORK INC.
    d/b/a Sushi Suki;
SUSHI SUKI, INC.
    d/b/a Sushi Suki;
MINH CHUNG TRUONG,
MANDY LI TRUONG,
HENG LI ZHU,
"JANE DOE",
MU HUO CHEN
MU FA CHEN, and
JAMES WANG

Defendants.

------------------------------------------------------------------x

**Case No: 17-cv-10240**

**<u>29 U.S.C. § 216(b)</u>**
**<u>COLLECTIVE ACTION &</u>**
**<u>FED. R. CIV. P. 23 CLASS</u>**
**<u>ACTION</u>**

**<u>COMPLAINT</u>**

    Plaintiffs, JIN ZHONG XIN and RUIXUAN CUI (hereinafter referred to as "Plaintiffs"),

on behalf of themselves and others similarly situated, by and through his attorneys, Troy Law,

PLLC, hereby brings this complaint against Defendants 1A ROYAL THAI CUISINE & 1A

ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; ROYAL SIAM

RESTAURANT INC. d/b/a Royal Siam Thai Cuisine; SUSHI SUKI YORKER, INC. d/b/a Sushi

Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki; MINH CHUNG TRUONG, MANDY LI TRUONG, HENG LI ZHU, "JANE DOE", MU HUO CHEN, MU FA CHEN, (hereinafter referred to as "Defendants").

## INTRODUCTION

1. This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) breach of implied contract for reimbursement of all costs and expenses of operating their delivery vehicles on behalf of Defendants, (4) liquidated damages, (5) prejudgment and post-judgment interest; and/or (6) attorneys' fees and costs.

3. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq*. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants:  (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) breach of implied contract for reimbursement of all costs and expenses of operating their delivery vehicles on behalf of Defendants, (4) up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages

for each pay day, (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid

"spread of hours" premium, unpaid overtime in the amount of twenty five percent under

NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY

Wage Theft Prevention Act, (7) 9% simple prejudgment interest provided by NYLL, (8)

post-judgment interest, and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

4.  This Court has original federal question jurisdiction over this controversy under 29 U.S.C.

    §216(b), 28 U.S.C. § 1331.

5.  This Court has jurisdiction over state law claims asserted here pursuant to the Class Action

    Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York

    Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and

    (c), because Defendants conduct business in this District, and the acts and omissions giving

    rise to the claims herein alleged took place in this District.

## THE PARTIES

### *PLAINTIFFS*

7.  Plaintiff JIN ZHONG XIN was employed as a deliveryman at 1A ROYAL THAI CUISINE

    & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM

    RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New

    York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI

    SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at

1577 York Avenue, New York, NY 10028.

8. Plaintiff RUIXUAN CUI was employed as a deliveryman at 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011.

## DEFENDANTS

### Corporate Defendants

9. Defendants 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine is a domestic business corporations organized under the laws of the State of New York with a principal address at 240 Eighth Avenue, New York, NY 10011.

10. 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine is a business which engages in interstate commerce and that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

11. 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine purchased and handled goods that moved in interstate commerce.

12. Defendants ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine is a domestic business corporations organized under the laws of the State of New York with a principal address at 240 Eighth Avenue, New York, NY 10011.

13. ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine is a business which engages in interstate commerce and that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

14. ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine purchased and handled goods that moved in interstate commerce.

15. Defendants SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki is a domestic business corporations organized under the laws of the State of New York with a principal address at 1577 York Avenue, New York, NY 10028.

16. SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki is a business which engages in interstate commerce and that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

17. SUHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki purchased and handled goods that moved in interstate commerce.

18. Defendants SUSHI SUKI, INC. d/b/a Sushi Suki is a domestic business corporations organized under the laws of the State of New York with a principal address at 1577 York Avenue, New York, NY 10028.

19. SUSHI SUKI, INC. d/b/a Sushi Suki is a business which engages in interstate commerce and that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

20. SUSHI SUKI, INC. d/b/a Sushi Suki purchased and handled goods that moved in interstate commerce.

21. Corporate Defendants 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine; SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki are joint employers of Plaintiff and constitute an enterprise as the term is defined by 29 USC §203(r) insofar as the establishments share employees, including Plaintiff JIN ZHONG XIN, to work as needed at the different restaurant locations, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business

purpose, and are co-owned by the same partners.

22. At all relevant times, the work performed by Plaintiff was directly essential to the enterprise operated by Corporate Defendants.

23. At all relevant times, Corporate Defendant employed in excess of seventy (70) employees at any one time.

### Individual Defendants

24. The Individual Defendants are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest corporate shareholders are individually responsible for unpaid wages under the New York Business Corporation Law ("NYBSC") § 630(a).

25. MINH CHUNG TRUONG (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

26. MINH CHUNG TRUONG  acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine

located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER,

INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI,

INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

27. MANDY LI TRUONG (1) had the power to hire and fire employees, (2) supervised and

controlled employee work schedules and conditions of employment, (3) determined

employee rates and methods of payment, and (4) maintained employee records at 1A

ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai

Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at

240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a

Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a

Sushi Suki located at 1577 York Avenue, New York, NY 10028.

28. MANDY LI TRUONG  acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as

well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable

with 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese

Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine

located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER,

INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI,

INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

29. HENG LI ZHU (1) had the power to hire and fire employees, (2) supervised and controlled

employee work schedules and conditions of employment, (3) determined employee rates and

methods of payment, and (4) maintained employee records at 1A ROYAL THAI CUISINE

& 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM

RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

30. HENG LI ZHU is known as "Boss" at the restaurant.

31. Upon personal knowledge of Plaintiff, HENG LI ZHU fired at least two (2) individuals, including a coworker with last name WU.

32. HENG LI ZHU  acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

33. "JANE DOE" is known as "Lady Boss" at the restaurant. She is also known as "Mindy" or "Maggie."

34. Upon personal knowledge of Plaintiffs, "JANE DOE" fired at least six (6) employees, including Plaintiff JIN ZHONG XIN.

35. "JANE DOE" is husband and wife with HENG LI ZHU.

36. "JANE DOE" is a large shareholder of Sushi Suki and she had the authority to send restaurant employees from Anago Sushi to Sushi Suki to help out.

37. MU HUO CHEN (1) had the power to hire and fire employees, (2) supervised and controlled

employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

38. MU HUO CHEN  acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

39. MU FA CHEN (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

40. MU FA CHEN  acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011, as well as at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

## STATEMENT OF FACTS

41. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

42. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

43. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

44. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

45. At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiff's hours worked and wages paid.

46. Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

47. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

48. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  the employee's name;  the name of the employer;  the address and phone number of the employer;  the employee's rate or rates of pay and basis thereof; the employee's gross wages; the employee's deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

49. Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half time (1.5x) employees' regular rates would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

50. At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

### Plaintiff JIN ZHONG XIN

51.  From on or about January 30, 2017 to on or about August 13, 2017, Plaintiff, JIN ZHONG

XIN was employed by Defendants to work as a delivery person at 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011.

52. For three days from on or about July 03, 2017 to July 05, 2017, Plaintiff JIN ZHONG XIN was assigned by Defendant "JANE DOE" to work at SUSHI SUKI YORKER, INC. d/b/a Sushi Suki; SUSHI SUKI, NEW YORK INC. d/b/a Sushi Suki; SUSHI SUKI, INC. d/b/a Sushi Suki located at 1577 York Avenue, New York, NY 10028.

53. For the three days of work with Sushi Suki, Plaintiff JIN ZHONG XIN was paid by Anago Siem.

54. At the time he was hired, Plaintiff, JIN ZHONG XIN was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

55.  Throughout his employment, Plaintiff, JIN ZHONG XIN'S regular work schedule ran from 10:40 am to 22:00 pm for 11.33 hours each day, six days (Sunday, Monday, Tuesday, Wednesday, Thursday, and Friday) each week, with Saturday's off.

56.  Throughout his employment, Plaintiff, JIN ZHONG XIN'S regular work schedule required him to take alternate late shifts which ran from 11:30 am to 23:00 pm for four days a week.

57. Throughout his employment, Plaintiff, JIN ZHONG XIN'S was given a one-hour (1 hour) rest break each day.

58. In addition, throughout his employment, Plaintiff, JIN ZHONG XIN was afforded two (2) ten-minute (10 minute) meal breaks during the working day. However, Plaintiff was not allowed to leave the restaurant during these breaks because he was required to remain on call to handle any orders that came in during that time.

59. Plaintiff, JIN ZHONG XIN worked a total of sixty-three (63) hours per week.

60.  From January 30, 2017 to August 13, 2017, Plaintiff, JIN ZHONG XIN was paid a flat salary of eleven hundred dollars ($1100.00) per month although he worked over forty (40) hours each week.

61.  Throughout his employment, Defendants failed to provide Plaintiff, JIN ZHONG XIN with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  his name; the name of the employer; the address and phone number of the employer; his rate or rates of pay and basis thereof; his  gross wages; his deductions; allowances, if any, claimed as part of the minimum wage;  net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay;  his number of regular hours worked, and his number of overtime hours worked.

62.  At no time during Plaintiff, JIN ZHONG XIN's employment did Defendants inform him that they were taking any credits towards the minimum wage.

63.  Throughout his employment, Plaintiff, JIN ZHONG XIN was not paid overtime for hours worked above forty (40) in any given workweek.

64.  Throughout his employment, Plaintiff, JIN ZHONG XIN was not paid spread of hours for workdays that began and ended ten (10) hours apart.

65. While employed by Defendants, Plaintiff, JIN ZHONG XIN was not exempt under federal and state laws requiring employers to pay employees overtime.

66. Plaintiff JIN ZHONG XIN's electric bicycle cost around One Thousand Four Hundred Twenty Dollars ($1420) to purchase.

67. Plaintiff JIN ZHONG XIN purchased his electric bicycle to perform deliveries for the sole benefit of the Defendants.

68. Defendants did not reimburse Plaintiff JIN ZHONG XIN for the out-of-pocket cost for the purchase and maintenance of his electric bicycle.

### PLAINTIFF RUIXUAN CUI

69.  From on or about February 1, 2017 to on or about May 10, 2017, Plaintiff, RUIXUANCUI was employed by Defendants to work as a delivery person at 1A ROYAL THAI CUISINE & 1A ANAGO SUSHI INC. d/b/a Anago Sushi Japanese Thai Cuisine; and ROYAL SIAM RESTAURANT INC. d/b/a Royal Siam Thai Cuisine located at 240 Eighth Avenue, New York, NY 10011.

70. At the time he was hired, Plaintiff, RUIXUAN CUI was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

71. Throughout his employment, Plaintiff, RUIXUAN CUI's regular work schedule ran from 10:40 am to 22:00 pm for 11.33 hours each day, six days (Sunday, Monday, Tuesday, Wednesday, Thursday, and Friday) each week, with Saturday's off.

72. Throughout his employment, Plaintiff, RUIXUAN CUI's regular work schedule required him to take alternate late shifts which ran from 11:30 am to 23:00 pm for four days a week

73. Throughout his employment, Plaintiff, RUIXUAN CUI was given a one-hour (1 hour) rest break each day.

74. In addition, throughout his employment, Plaintiff, RUIXUAN CUI was afforded two (2) ten-minute (10 minute) meal breaks during the working day. However, Plaintiff was not allowed to leave the restaurant during these breaks because he was required to remain on call to handle any orders that came in during that time.

75. Plaintiff, RUIXUAN CUI worked a total of sixty-three (63) hours per week.

76. From January 30, 2017 to August 13, 2017, JIN ZHONG XIN was paid a flat salary of eleven hundred dollars ($1100.00) per month although he worked over forty (40) hours each week.

77. Throughout his employment, Defendants failed to provide Plaintiff, RUIXUAN CUI with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  his name; the name of the employer; the address and phone number of the employer; his rate or rates of pay and basis thereof; his  gross wages; his deductions; allowances, if any, claimed as part of the minimum wage;  net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay;  his number of regular hours worked, and his number of overtime hours worked.

78. At no time during Plaintiff, RUIXUAN CUI's employment did Defendants inform him that they were taking any credits towards the minimum wage.

79. Throughout his employment, Plaintiff, RUIXUAN CUI was not paid overtime for hours worked above forty (40) in any given workweek.

80. Throughout his employment, Plaintiff, RUIXUAN CUI was not paid spread of hours for workdays that began and ended ten (10) hours apart.

81. While employed by Defendants, Plaintiff, RUIXUAN CUI was not exempt under federal and state laws requiring employers to pay employees overtime.

82. Plaintiff RUIXUAN CUI's electric bicycle cost around One Thousand Five Hundred Dollars ($1500) to purchase.

83. Plaintiff RUIXUAN CUI purchased his electric bicycle to perform deliveries for the sole benefit of the Defendants.

84. Defendants did not reimburse Plaintiff RUIXUAN CUI for the out-of-pocket cost for the purchase and maintenance of his electric bicycle.

## COLLECTIVE ACTION ALLEGATIONS

85. Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

86. Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

87. All said persons, including Plaintiffs, are referred to herein as the "Class."

88. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

89. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are over forty (40) members in the class.

*Commonality*

90. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.  Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

    b.  Whether Defendants wrongfully shifted its business expenses to Plaintiffs and New York class members by demanding that they bear delivery expenses of the employer;

    c.  Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

d.  Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

e.  Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

f.  Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

g.  Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

h.  Whether Defendants provided paystubs detailing full and accurate rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

i.  At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

***Typicality***

91. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime compensation. They were, furthermore, subject to illegal deductions. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and

other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

92. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent representing Plaintiffs in both class action and wage and hour employment litigation cases.

*Superiority*

93. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of

inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

94. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

**STATEMENT OF CLAIMS**

**COUNT I.**
**[Violations of the Fair Labor Standards Act—Minimum Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

95. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

96. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

97. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be

liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

98. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Minimum Wage Brought on behalf of Plaintiffs and Rule 23 Class]

99. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

100.   At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

101.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

102.   Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

103.   An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

**COUNT III.**
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

104.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

105.    The FLSA provides that no employer engaged in commerce shall employ a covered

employee for a work week longer than forty (40) hours unless such employee receives

compensation for employment in excess of forty (40) hours at a rate not less than one and

one-half times the regular rate at which he or she is employed, or one and one-half times the

minimum wage, whichever is greater. 29 USC §207(a).

106.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207

shall be liable to the employees affected in the amount of their unpaid overtime

compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

107.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated

the FLSA.

108.    At all relevant times, Defendants had, and continue to have, a policy of practice of

refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and

Collective Action Members for all hours worked in excess of forty (40) hours per workweek,

which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29

U.S.C. §§207(a)(1) and 215(a).

109.    The FLSA and supporting regulations required employers to notify employees of

employment law requires employers to notify employment law requirements. 29 C.F.R.

§516.4.

110.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements

of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA

Collectives' labor.

111.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime

rate of time and one half for all hours worked in excess of forty (40) per week when they

knew or should have known such was due and that failing to do so would financially injure

Plaintiffs and Collective Action members.

**COUNT IV.**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiffs and Rule 23 Class]**

112.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

113.    An employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to twenty-five percent (25%)

before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act,

and interest.

114.    At all relevant times, Defendants had a policy and practice of refusing to pay the

overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs

and the class are entitled to.

115.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

116.    Defendants' failure to pay Plaintiffs were not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiffs and Rule 23 Class]

117.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

118.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

119.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Motor
### Vehicle, including Depreciation, Insurance, Maintenance and Repairs]

120.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their delivery vehicle, including the purchase, maintenance, repair, maintenance of a delivery motor vehicle and/or an electricity bicycle.

122.    Based on their personal experience and available information, Plaintiffs SHIQIU CHEN, CHANGREN ZOU and WEI SHI can document actual "out-of-pocket" vehicle related expenses of their motor vehicle.

123.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to maintain the motor vehicle in working condition.

124.    Plaintiffs purchased, maintained and repaired the motor vehicle at their own expense.

125.   Plaintiffs performed these deliveries for the sole benefit of the Defendants.

126.   Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of

gasoline and/or the car maintenance.

127.   The IRS has published a standard mileage rate used to calculate the costs of operating an

automobile for business purposes.

128.   In 2013, the IRS standard mileage rate for the use of a car is 56.5 cents per mile for

business miles driven.

129.   In 2014, the IRS standard mileage rate for the use of a car is 56 cents per mile for

business miles driven.

130.   In 2015, the IRS standard mileage rate for the use of a car is 57.5 cents per mile for

business miles driven.

131.   In 2016, the IRS standard mileage rate for the use of a car is 54 cents per mile for

business miles driven.

132.   As a result of the afore-alleged conduct of the parties, an implied contract arose between

them the terms of which are that Plaintiffs would incur the expenses for motor vehicle

purchase and maintenance in exchange for compensation from Defendants for such expenses.

133.   Defendants owe Plaintiffs their overdue costs of maintaining motor vehicle for

Defendants' benefit.

### COUNT VII.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs]

134.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

135.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

136.    Based on their personal experience and available information, Plaintiffs CHANGREN ZOU and WEI SHI can document actual "out-of-pocket" vehicle related expenses of his electric bicycle/ delivery vehicle.

137.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to maintain the delivery vehicle in working condition.

138.    Plaintiffs purchased, maintained and repaired the electric bicycle at his own expense.

139.    Plaintiffs performed these deliveries for the sole benefit of the Defendants.

140.    Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of gasoline and/or the maintenance of the vehicle.

141.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

142.    Defendants never compensated Plaintiffs for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries.  As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

143.    Defendants owe Plaintiffs his overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

**COUNT VIII.**
**[Violation of New York Labor Law—Failure to Provide Meal Periods**
**Brought on behalf of Plaintiffs and Rule 23 Class]**

144.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

145.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL§ 162.

146.    Defendants failed to provide meal periods required by NYLL §162 for every day that Plaintiffs and the Rule 23 class work or worked.

147.    Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

148.    Defendants' failure to provide the meal periods required by NYLL §162 was not in good faith.

## COUNT IX.
### [Violation of New York Labor Law—Record-Keeping Requirements Brought on behalf of Plaintiffs and Rule 23 Class]

149.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

150.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

151.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including

loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

152.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

153.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs were not in good faith.


## COUNT X.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on behalf of Plaintiffs and Rule 23 Class]

154.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

155.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

156.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

157.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

158.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT XI.
### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiffs and Rule 23 Class]

159.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

160.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

161.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiffs, and did not provide the paystub on or after each Plaintiffs' payday.

162.    Due to Defendants' violations of New York Labor Law, each Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiffs together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT XII.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiffs]

163.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

164.    26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

165.    Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

### COUNT XIII.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349
### Brought on behalf of the Plaintiffs]

166.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

167.    NY General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

168.    Due to Defendants' violations of NY GBS Law §349, Plaintiffs are entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

169.    Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)   A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)   An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)    Up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)    Up to five thousand dollars ($5,000) per Plaintiffs for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)    Reimbursement of reasonable out-of-pocket costs sustained by Plaintiffs and similarly situated drivers in the purchase, maintenance and repair of their motor vehicles as drivers in direct service of Defendant Corporations;

k)    An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)    The cost and disbursements of this action;

n)    An award of prejudgment and post-judgment fees;

o)    Providing that if any amounts remain unpaid upon the expiration of ninety days

following the issuance of judgment, or ninety days after expiration of the time to

appeal and no appeal is then pending, whichever is later, the total amount of judgment

shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)    Such other and further legal and equitable relief as this Court deems necessary, just,

and proper.

Dated: Flushing, New York
January 9, 2018

TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and Proposed Class Plaintiffs*


  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com